FILED
MAR 24 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JIM B. DUNNIGAN,

             Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

             Defendant.

CV. 07-1645-AC

FINDINGS AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

    Claimant Jim B. Dunnigan ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). *See* 42 U.S.C. §§ 401-433 (2008). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, the court concludes that the Commissioner erred

FINDINGS & RECOMMENDATION           1           {KPR}

in finding Claimant not disabled and that the claim should be remanded for an award of benefits.

*Procedural History*

Claimant protectively filed for DIB on March 22, 2005, alleging a disability onset date of April 1, 2003. The claim was denied initially and on reconsideration. On May 10, 2007, a hearing was held before an Administrative Law Judge ("ALJ"), who issued a decision on June 22, 2007, finding Claimant not disabled. Claimant requested review of this decision on September 10, 2007. The Appeals Council denied this request making the ALJ's decision the Commissioner's final decision. Claimant filed for review of the final decision in this court on November 1, 2007. The Commissioner moved to remand the case for further administrative proceedings on October 3, 2008.

*Standard of Review*

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Andrews*, 53 F.3d at 1039-1040. The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins v. Social Sed. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony,

and resolving ambiguities. *Andrews*, 53 F.3d at 1039. In determining a claimant's residual functional capacity ("RFC"), an ALJ must consider all relevant evidence in the record, including, *inter alia,* medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883, *citing* SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996).

*Summary of the ALJ's Findings*

The ALJ engaged in the five-step "sequential evaluation" process when he evaluated Claimant's disability, as required. *See* 20 C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

I.     Steps One and Two

At Step One, the ALJ concluded that Claimant had not engaged in any substantial gainful activity since the onset of his alleged disability. (Tr. 11.) At Step Two, the ALJ determined that Claimant had the following severe impairments: skin disorders, a depressive disorder, an anxiety-related disorder, specifically Post Traumatic Stress Disorder ("PTSD"), and a substance addiction disorder, specifically alcohol dependence. (Tr. 11.) He also found that Claimant suffered from the following non-severe impairments: knee pain and hand pain. (Tr. 26.) The ALJ's specific findings as to each impairment, both severe and non-severe, are detailed below.

   *a.    Skin disorders*

In April 2004, Claimant visited the Veterans Administration ("VA"), at which time he was denied compensation for his skin disorders. (Tr. 11.) A VA progress note from August 2004 notes that he suffered from "rosacea, psoriasis, and benign skin lesions which were all managed or stable."

(Tr. 11.) As of November 2005, the VA reported that Claimant's rosacea had improved with alcohol abstinence, but that he had psoriasis in various locations on his body. (Tr. 12.)

### b. *Depressive disorder*

In February 2007, the VA diagnosed Claimant with "Major Depression (secondary to PTSD and related to caring for grandchildren)[.]" (Tr. 12.)

### c. *PTSD*

Claimant took early retirement from his job in April 2003 because "he was having difficulty being around people and [having] anxiety attacks." (Tr. 11.) The VA determined that Claimant was entitled to a "50% service-related compensation for [PTSD]," which was later increased to seventy percent in May 2007. (Tr. 11.) In 2005, Claimant requested help from the VA to manage his PTSD and anger. In February 2005, Dr. Gary Monkarsh "diagnosed chronic and moderate PTSD . . . with a GAF of 56." (Tr. 11.) Dr. Duane Kolilis diagnosed Claimant with PTSD in July 2005 and gave him a Global Assessment of Functioning ("GAF") score of 62. Dr. Peter LeBray, a Disability Determination Services physician, diagnosed Claimant with "a 12.06 Anxiety-Related Disorder[.]" (Tr. 12.) Claimant's GAF was rated at 70 in December 2005, but fell to 45 in February 2007.

### d. *Alcohol dependence*

In February 2005, Claimant "reported drinking 10 or more drinks per day," and Dr. Monkarsh diagnosed Claimant with episodic alcohol abuse. (Tr. 11.) In July 2005, Dr. Kolilis diagnosed Claimant with "Alcohol Dependence [and] Alcohol-Related Disorder (NOS)," and Dr. LeBray diagnosed Claimant with "12.09 Substance Addiction Disorder with B criteria of mild, moderate, and 'none' and no evidence of C criteria." (Tr. 11-12.) Finally, in February 2007 the VA determined that Claimant suffered from "Alcohol Abuse (in remission)[.]" (Tr. 12.)

   *e.   Hand pain*

Claimant reported hand pain in April 2005, but "[p]rogress notes report[ed] minimal tenderness and a small amount of flexion loss." (Tr. 12.) Claimant again reported hand pain in July 2006, but no range of motion or other restrictions were noted.

   *f.   Knee pain*

Claimant reported knee pain in April 2005, but "[p]rogress notes report[ed] minimal tenderness and a small amount of flexion loss." (Tr. 12.) Claimant again reported knee pain in August 2006 "after walking long distances and then bending his knee when sitting." (Tr. 12.) However, this did not stop Claimant from continuing to walk and engaging in other activities in his house and yard. Claimant was given a knee brace. Claimant reported increased activity in both October and November 2006, including biking, lifting weights, and attending T'ai Chi classes.

II.   Step Three

At Step Three, the ALJ concluded that "[C]laimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 12.) In particular, the ALJ considered the listings for Affective Disorders, 12.04, and Anxiety-Related Disorders, 12.06. 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ cited Dr. Robert Davis's testimony regarding Claimant's functional limitations. According to Dr. Davis, Claimant is moderately restricted in activities of daily living; markedly limited in social functioning; moderately restricted in maintaining concentration, persistence, and pace; and experiences no episodes of decompensation. Dr. Davis concluded that Claimant did not satisfy the "C" criteria for either Listing 12.04 or 12.06, although the "C" criteria for Listing 12.04 would be met "if [C]laimant was exposed to many people, surprises and changes, or additional

stress." (Tr. 12.) Because the ALJ felt he had accounted for those circumstances in formulating Claimant's residual functional capacity ("RFC"), he concluded that Claimant did not meet Listing 12.04.

III. Claimant's RFC

In determining Claimant's RFC, the ALJ first noted that Claimant had no exertional limitations. However, due to nonexertional limitations, "Claimant [was] limited to simple, routine, repetitive work; to no working around large crowds, to no concentrated exposure to wetness or humidity; to no working around loud/sudden/unpredictable noises; and to occasionally working with the public or co-workers." (Tr. 12-13.) The ALJ outlined a two-step process for evaluating a claimant's symptoms. The ALJ must first assess whether an underlying mental or physical impairment could give rise to the claimant's symptoms and, second, the extent to which the intensity, persistence, and limiting effects of those symptoms limit the claimant's ability to work. If the claimant's representations as to the second element are not substantiated by the objective medical record, the ALJ must evaluate the claimant's credibility.

Here, the ALJ concluded that Claimant's stated symptoms were not fully supported by objective evidence and, accordingly, the ALJ evaluated Claimant's credibility. The ALJ found Claimant not fully credible for the following reasons. First, the ALJ cited evidence that Claimant's depression was not as limiting as he claimed it to be. In October 2005, Claimant reported improvement in symptoms after his son returned from Iraq and a general improvement in his physical health. Claimant told Dr. Monkarsh in February 2005, that "he was not significantly occupationally impaired prior to his retirement." (Tr. 14.) On two occasions, in May and July 2005, Claimant reported that his depression was not a major problem and, in April 2006, "opined a

FINDINGS & RECOMMENDATION 6 {KPR}

possible benefit" from taking Paxil. (Tr. 14.)

Second, the ALJ found Claimant not fully credible as to his alcohol use. Claimant was diagnosed with alcohol dependence in May 2005. In July 2005, Dr. Kolilis "described [C]laimant as guarded and vague, possibly underreporting past and current alcohol use." (Tr. 14.) Dr. Kolilis also reported that when sober, Claimant was capable of increased concentration, work-related activities, socializing, adapting to changes, and following instructions. Claimant reported, in November 2005, that he used alcohol primarily when socializing.

Third, the ALJ summarized the record evidence that undermined Claimant's complaints. A July 2005 assessment by Dr. LeBray characterized Claimant as "moderately limited" in following instructions, interacting with the public, dealing with supervisory figures, interacting with peers, and setting and meeting goals. (Tr. 14-15.) Dr. LeBray characterized Claimant as "not significantly limited" in all other areas. (Tr. 14.) Dr. Mary Ann Westfall found no exertional limitations or limitations in communication, though she noted that Claimant should avoid wetness and humidity. VA progress notes in February 2006 revealed that Claimant went to the beach, traveled to Bend, Oregon for a birthday party, and visited Idaho on a car trip. In February 2007, the VA progress notes reveal that Claimant hunted and fished with friends and family and "occasionally gardened." (Tr. 15.) Although his short term memory and concentration were below average and he had an "increased startle reaction," Claimant had normal, clear thought processes. (Tr. 15.) Finally, the ALJ recognized that the VA's disability rating of Claimant's PTSD increased from fifty to seventy percent in May 2007, but noted that the VA uses different standards for determining disability. For all of these reasons, the ALJ found Claimant not fully credible.

The ALJ then summarized third party testimony given by Claimant's wife, Mrs. Myrna

Dunnigan ("Mrs. Dunnigan"). Mrs. Dunnigan stated that Claimant was able to engage in many physical activities, including light housekeeping, caring for his grandson, cooking meals, walking, driving, biking, gardening, camping and hunting. However, Mrs. Dunnigan also described Claimant's mental limitations which included not leaving the house, avoiding social situations and personal hygeine, and experiencing a lot of anger, agitation, and disconnection.

## IV. Step Four

At Step Four, the ALJ concluded that because Claimant is limited to unskilled work and as to noise level, he could not perform "past relevant work as a warehouse worker, a forklift operator, a Stevedore I, and a union representative." (Tr. 15.)

## V. Step Five

At Step Five, the ALJ concluded that Claimant was capable of performing other work that exists in substantial numbers in the national economy. The ALJ cited Vocational Expert ("VE") testimony that a hypothetical individual with Claimant's limitations could perform the jobs of small products assembler, sorter, and janitor. Therefore, the ALJ found Claimant not disabled.

*Discussion*

The parties agree that the ALJ erred in finding Claimant not disabled. The parties disagree, however, as to whether the claim should be remanded for reconsideration or remanded for an award of benefits. For the reasons that follow, the court should remand the claim for an award of benefits.

The decision to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The court's decision turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further

administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

The Commissioner concedes that the ALJ erred (1) in evaluating Dr. Davis's testimony as to whether Claimant met or equaled a listing, (2) in evaluating the VA's disability rating, and (3) in making findings at Step Five. The Commissioner does not concede that the ALJ erred in finding Claimant's obesity and osteoarthritis non-severe. Claimant argues that if the ALJ erred and Claimant meets a listing at Step Three, no additional analysis is needed to find Claimant disabled. The court agrees that the listing determination is dispositive: if Claimant is found disabled at Step Three, only a remand for an award of benefits is appropriate.

1. <u>Severity of Claimant's osteoarthritis and obesity</u>

As a preliminary matter, the court concludes that the ALJ did not err in classifying Claimant's severe and non-severe impairments. The record evidence supports the ALJ's finding that Claimant's osteoarthritis (i.e., hand and knee pain) and obesity were non-severe. Claimant first argues that the ALJ did not discuss the osteoarthritis in Claimant's thumbs. In particular, Claimant cites a progress note that states, in relevant part: "Arthritis left hand, mild weakness, full AROM, no c/o acute pain with us, stable." (Tr. 220.) Claimant also cites a medical report that states, in relevant part: "Intermittent pain both base of thumbs . . . . Hands-no synovitis/deformities, min tenderness at the base of the thumbs." (Tr. 322.) Neither citation supports Claimant's contention that hand or thumb pain presents more than a minimal limitation. The court has also reviewed the record evidence and found no other evidence that Claimant's hand pain is severe.

Claimant also argues that the fact that doctors offered him the use of a cane, despite the fact

that Claimant declined the offer, demonstrated that his knee pain was sufficiently debilitating to qualify as a severe impairment. Claimant cites a progress note that reads, with regard to his knee: "[Claimant] states that he is not yet ready for a cane at this point, but would certainly be interested in tips on posture and techniques that would enable him to walk further with less pain." (Tr. 529.) Again, this evidence is insufficient to undermine the ALJ's findings as to Claimant's severe and non-severe impairments.

Finally, Claimant argues that the ALJ failed to address his obesity and incorrectly classified it as a non-severe impairment. Claimant cites a progress note that gives obesity as a diagnosis and states that modified activities, increased fitness, and weight loss were discussed and encouraged. (Tr. 322.) This evidence and the court's review of the record evidence do not indicate that Claimant's obesity was sufficiently limiting to qualify as a severe impairment. Accordingly, the ALJ's conclusion that Claimant's obesity was non-severe was appropriate.

2.      Listing 12.04

Dr. Davis testified at Claimant's hearing before the ALJ as to whether Claimant met or medically equaled a listing. Dr. Davis testified that Claimant suffered from several impairments, one of which was "[PTSD], which would be a condition that meets the criteria on 12.06 . . . of recurrent intrusive recollections of a traumatic experience which are a source of marked distress." (Tr. 41.) However, later testimony reveals that he did not believe Claimant met the "C" criteria for that listing. (Tr. 44.) Dr. Davis also testified that Claimant suffered from alcohol dependence, under Listing 12.09, for some time, though this condition was "currently in full, sustained remission without relapse[,]" and had been for the two years prior to the hearing. (Tr. 41-42.)

Regarding Claimant's depressive disorder and Listing 12.04, Dr. Davis stated:

> As to the 12.04, here's where I think the problem is, and it's under number two, and I do believe that that exists given an atmosphere where you have to work around many people or surprises and changes, there is additional stress, I think that that would cause him to decompensate.

(Tr. 45.) The ALJ acknowledged this testimony, but explained that Listing 12.04(C)(2) "would apply if claimant was exposed to many people, surprises and changes, or additional stress. However, since those limitations have been added to claimant's [RFC], [C]laimant's impairment would not satisfy the criteria" of Listing 12.04(C)(2). (Tr. 12.)

The Commissioner argues that, although the ALJ erred in evaluating this testimony, remand proceedings are needed to clarify the testimony and determine if Claimant's condition actually meets or equals this listing. Claimant's response is two-fold: (1) all jobs are susceptible to surprises, changes, and additional stress, regardless of skill level or the amount of restrictions placed on a particular job and (2) the ALJ's analysis is out of sequence as the listing determination occurs prior to the RFC determination. If a claimant has met a listing at Step Three, his or her disability has already been established and cannot be altered by subsequent limitation of the claimant's RFC.

To meet or medically equal the subpart C of Listing 12.04, a claimant must demonstrate:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1. Dr. Davis specifically referred to subpart (C)(2) and indicated that Claimant was susceptible to decompensating under certain circumstances. In light of this listing and Dr. Davis's testimony, the court reviewed the evidentiary record.

A careful review of the evidentiary record reveals the contours of Claimant's mental health challenges resulting from depression, PTSD, and alcohol dependence in remission. Claimant is a veteran of the Vietnam War who served from November 16, 1966, to November 15, 1968. (Tr. 98.) Claimant filed a disability claim with the VA on March 23, 2004. Around that same time, Claimant sought help from the VA for various problems, including PTSD and alcohol abuse. On February 3, 2005, Claimant reported a history of alcohol abuse and alcohol use of ten or more drinks in one day on at least a weekly basis. (Tr. 208, 212.) Claimant also reported that he had not been "depressed or sad during most of the last year[.]" (Tr. 212.)

On March 2, 2005, the VA rated Claimant's PTSD disability at fifty percent (50%). This rating "is assigned for occupational and social impairment with reduced reliability and productivity," as a result of symptoms that include "impaired judgment," and "difficulty in establishing and maintaining effective work and social relationships." (Tr. 99.) The VA characterized Claimant's PTSD as "chronic and moderate," and assigned Claimant a GAF of 56. (Tr. 100.) Specifically, Claimant:

> suffer[s] from daily moderate symptoms of PTSD such as: [marital] problems, self isolation, anger towards others, [Claimant was] exposed to a number of life threatening, traumatic events and . . . persistently re-experience[s] these events, to which [he] respond[s] with feelings of helplessness and horror. [Claimant] avoid[s] stimuli associated with the events and has a numbing of general responsiveness. [Claimant] suffer[s] from persistent symptoms of increased arousal.

(Tr. 100, quoting Dr. Monkarsh, January 5, 2005 at Tr. 231.) At this time, Claimant was not

diagnosed with any additional mental disorders.

On July 12, 2005, Dr. Kolilis performed a psychodiagnostic evaluation on Claimant. Dr. Kolilis suggested that Claimant might be an unreliable historian regarding his alcohol abuse. Claimant stated that "boredom and meaninglessness" trigger his depression, as do "angry and upset people[.]" (Tr. 287.) Claimant admitted to "some" suicidal ideation. (Tr. 287.) Claimant stated that when he experiences anxiety or panic, drinking alcohol helps. Dr. Kolilis assessed Claimant's GAF at 62 and opined that Claimant is capable of work-related activities when clean and sober.

On July 26, 2005, Dr. LeBray assessed Claimant's functional capacity and limited Claimant to "remembering and understanding instructions which are short and simple and some complex instructions." (Tr. 307.) As for interaction with the public and coworkers, Claimant was limited to brief and structured contact. However, Dr. LeBray also stated: "No limitations noted when clean, sober." (Tr. 307.) The record reflects that at least as early as June 20, 2005, Claimant was completely abstaining from alcohol use, (Tr. 398-99), and by at least October 19, 2005, Claimant was diagnosed with "Alcohol Dependence in Early Full Remission." (Tr. 318.)

On February 24, 2007, Dr. Gregg Sashkin evaluated Claimant's PTSD. He found that, overall, Claimant's symptoms had significantly worsened since Claimant's son returned from Iraq. In particular, Claimant suffered from increased depression, poor concentration, hopelessness, suicidal ideation, with increased anger and difficulties with his wife. Dr. Sashkin diagnosed Claimant with PTSD, moderate to severe, major depression, alcohol abuse in remission and assessed Claimant's GAF at 45. (Tr. 491.) A GAF rating between 41 and 50 indicates either serious symptoms, such as suicidal ideation or obsessive rituals, or serious impairment in functioning in school, work, and/or relationships. The GAF scale gives as an example of impaired functioning at

this level being "unable to keep a job." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed. Text Revision (2000)).

On March 12, 2007, the VA increased Claimant's disability rating for PTSD to seventy percent (70%). This evaluation was based on:

> suicidal ideation; near-continuous depression affecting the ability to function independently, appropriately and effectively; impaired impulse control, such as anger control problems and irritability; reported difficulty in adapting to stressful circumstances; inability to establish and maintain effective relationships outside of your immediate family; hypervigilance and increased startle reaction; nightmares and insomnia; and problems with concentration.

(Tr. 494.) The PTSD diagnosis specifically referred to "secondary major depression[.]" (Tr. 492.)

Overall, the evidentiary record demonstrates that, despite active treatment at the VA to address alcohol abuse, depression, and PTSD, Claimant's symptoms had increased in severity by early 2007. (*See* Tr. 501, where a February 20, 2007, VA progress note stated that Claimant "ha[d] been very active with treatment.") Although some treatment providers opined that Claimant's condition would improve if Claimant's abstained from using alcohol, the evidence demonstrates that despite two years of sobriety, Claimant's condition had worsened considerably.

In the context of the disability review process set forth by the SSA, the court concludes that the record mandates a finding of disability. Dr. Davis testified before the ALJ that Claimant satisfied subsection (C)(2) of Listing 12.04. The ALJ interpreted Dr. Davis's finding to mean that in an appropriately tailored work environment, Claimant was capable of performing job duties. This is, however, contrary to the framework set forth by the SSA. In that framework, the listings analysis occurs prior to and separate from the RFC and vocational analysis. The listings are addressed solely to the Claimant's medical condition and, by meeting or medically equaling a listing, a claimant is

found disabled and is thus precluded from all employment. The context in which Dr. Davis made his statement renders its meaning clear and this conclusion is supported by the evidentiary record. Claimant meets Listing 12.04 and is thus disabled and all subsequent sequential step analysis is rendered moot.[1]

The Commissioner's argument that enhancement of the record is necessary to clarify the effect of Claimant's alcohol dependence on his disability overlooks the critical fact that Claimant had refrained from alcohol use for two years at the time of his May 2007 hearing. The record demonstrates, without question, that Claimant has abstained from alcohol since approximately June 2005. This is not to say that Claimant did not suffer from alcohol dependence at the time he filed his disability application. But, the fact that Claimant's impairments have not only persisted but worsened since he stopped drinking alcohol establishes that Claimant's alcohol dependence was not a material factor in his disability and effectively moots the issue for purposes of disability onset date calculation and the finding of disability as a whole. The court further notes that the ALJ did not seriously address the alcohol dependence issue, and the court sees no reason to depart from the ALJ's approach to this issue.

The court is similarly unpersuaded by the Commissioner's assertion that Claimant's activities of daily living contradict his claims of social isolation and undermine the VA's disability rating. The crucial distinction in this case is that all of Claimant's limitations are non-exertional; Claimant clearly has the physical capacity to perform work. It is Claimant's mental condition that prevents

---

[1] The Commissioner also argues that Claimant is capable of performing the jobs of sorter and small products assembler. This argument is mooted, however, by the court's conclusion that Claimant meets or equals Listing 12.04. Because Claimant is disabled at Step Three, the court does not evaluate Claimant's ability to perform jobs in the national economy as precluded by the finding of disability.

him from functioning in the workplace. In fact, Dr. Sashkin's February 28, 2007, assessment states that Claimant "is competent to handle his activities of daily living[,]" (Tr. 491), but as Dr. Davis pointed out in his testimony, it would be the stressors associated with an uncontrolled work environment that would cause Claimant to seriously decompensate. That Claimant can perform tasks and engage in controlled activities does not undermine the legitimacy of his diagnosed impairments.

## *Conclusion*

Based on the foregoing reasons, the Commissioner's motion to remand for further administrative proceedings should be denied. The court should remand the claim for an award of benefits.

## *Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than April 7, 2009. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 24th day of March, 2009.

JOHN V. ACOSTA
United States Magistrate Judge